UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RYK FRICKEY | CIVIL ACTION |
| v. | NO. 15-4884 |
| SHELL PIPELINE COMPANY, L.P. | SECTION "F" |

ORDER AND REASONS

Before the Court is Shell Pipeline Company, LP's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This litigation arises from personal injuries allegedly suffered by the plaintiff when his boat struck a submerged pipeline during a nighttime recreational frogging excursion.

Ryk Frickey is a commercial crabber who has owned many boats and spent a large part of his life on the Louisiana waters. On the evening of March 21, 2014, Frickey and his friend, Thomas Kellerhan, were recreationally frogging in the Avondale Ring Canal

1

(also known as "Marcello's Canal").[1]  At about 8:30 p.m., Frickey was operating his 16-foot oil well mud motor boat when it struck a submerged pipeline owned by Shell Pipeline Company, L.P.  The pipeline is marked by a five foot by six foot aluminum sign mounted on two creosote wooden pilings; the unlit sign is optic yellow with red letters:

>
> WARNING
>
> DO NOT ANCHOR
>
> OR DREDGE
>
> PETROLEUM PIPELINE
>
> ...

As a result of the allision, the vessel's unsecured battery struck Frickey, which he alleges caused injuries including a broken right ankle.  Days later, Frickey completed a Boating Incident Report, which he submitted to the Louisiana Department of Wildlife and Fisheries.  At the conclusion of his investigation, Sgt. Fox determined that the causes of the allision were, in ranking order: (1) operator's inexperience; (2) excessive speed; and (3) an unlit piling.

---

[1] Marcello's Canal is a drainage canal used to service the Avondale Pump Station.

On September 30, 2015, Frickey sued Shell Pipeline Company, L.P., invoking this Court's admiralty jurisdiction as well as diversity jurisdiction.  Frickey alleges that his injuries were caused by Shell's negligence, including its failure to: maintain the submerged pilings; properly mark the submerged pilings in violation of 33 C.F.R. § 64; and properly inspect the submerged pilings. Shell now seeks summary judgment dismissing the plaintiff's claims.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Ultimately, "[i]f

the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); see also Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted) ("[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of a claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must adduce competent evidence, including but not limited to sworn affidavits and depositions, to buttress his claims. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). However, affidavits or pleadings which contradict earlier deposition testimony cannot create a genuine issue of material fact sufficient to preclude an entry of summary judgment. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996); Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137 n. 23 (5th Cir. 1992).

In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007)

(citations omitted). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

### A.

Admiralty jurisdiction flows from Article III. See U.S. CONST. art. III, § 2. Federal district courts have original and exclusive jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction[.]" See 28 U.S.C. § 1333(1); see also 46 U.S.C. § 30101 ("admiralty ... jurisdiction ... extends to ... cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damages is done or consummated on land"). The primary purpose of federal admiralty jurisdiction is to "protect[] commercial shipping" with "uniform rules of conduct." Sisson v. Ruby, 497 U.S. 358, 362 (1990).

Whether a tort action falls within the federal courts' admiralty jurisdiction is governed by a two-part test: both the location and the connection-to-maritime activity prongs of the

test must be satisfied to trigger admiralty jurisdiction. See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).  The location prong asks whether "the tort occurred on navigable water or if the injury occurred on land but was caused by a vessel on navigable waters."  In re Louisiana Crawfish Producers, 772 F.3d 1026, 1029 (5th Cir. 2014).  To satisfy the location prong, the waters must be navigable in fact and have an "interstate nexus."  See 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 3-3 (5th ed. 2015).

The Supreme Court offered this guidance on what constitutes a navigable waterway for the purposes of exercising admiralty jurisdiction:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact.  And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.  And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

The Daniel Ball, 77 U.S. (10 Wall.) 557, 563 (1970).  In short, to be "navigable," the body of water must be used or susceptible of

being used, in its ordinary condition, as a continued "highway for commerce." See In re Katrina Canal Breaches Litig., 324 Fed.Appx. 370, 376 (5th Cir. 2009)(citing In re Boyer, 109 U.S. 629, 632 (1884)); see also LeBlanc v. Cleveland, 198 F.3d 353, 359 (2d Cir. 1999)("a waterway ... is navigable for jurisdictional purposes if it is presently used, or is presently capable of being used, as an interstate highway for commercial trade or travel in the customary modes of travel on the water. Natural and artificial obstructions that effectively prohibit such commerce defeat admiralty jurisdiction.").

An artificial canal can constitute a navigable body of water, provided it is used as "a highway for commerce between ports and places in different states." See In re Katrina Canal Breaches Litig., 324 Fed.Appx. 370, 376 (5th Cir. 2009)(citing In re Boyer, 109 U.S. 629, 632 (1884)). Notably, "the concept of navigability is inexorably tied to the concept of the body of water in question being susceptible of being used for commercial purposes." In re Katrina Canal Breaches Consolidated Litig., No. 05-4182, 2007 WL 1958997, at *4 (E.D. La. June 29, 2007). Thus, as another Section of this Court has previously held, drainage ditches providing an outlet for rainwater into Lake Pontchartrain do not constitute "navigable" waters of the United States. In re Katrina Canal Breaches Consolidated Litig., No. 05-4182, 2007 WL 1958997, at *4

(E.D. La. June 29, 2007)(holding that the Seventeenth Street Canal, as well as the London Avenue Canal and the Orleans Avenue Canal, all drainage ditches, are not navigable waters of the United States, reasoning that "the sole purpose of [the Seventeenth Street Canal] is to provide an outlet for drainage water being pumped from New Orleans and Jefferson Parish to be emptied into Lake Pontchartrain. There is simply no commercial activity involved along this body of water."); see also Tundidor v. Miami Dade County, 831 F.3d 1328, 1331-32 (11th Cir. 2016)(holding that the Coral Park Canal is not navigable because the S-25B water control structure prevents vessels on the canal from traveling outside the State of Florida; "[b]ecause the Coral Park Canal cannot support interstate commerce, it cannot satisfy the location requirement of admiralty jurisdiction.").

*B.*

Is Marcello's Canal a navigable waterway?

Shell submits that Marcello's Canal is not navigable because it is not capable of supporting commercial maritime activity. The Court agrees. Marcello's Canal is not a navigable waterway susceptible of commercial navigation and, therefore, it provides no basis for admiralty jurisdiction.

The record demonstrates that Marcello's Canal is a manmade drainage canal on private property; on February 12, 1968, Churchill Farms, Inc., owned by the Marcello family, granted Shell a servitude pursuant to a Right of Way Agreement filed in the 24th Judicial District Court in Jefferson Parish, Louisiana.[2]  The Right of Way agreement indicates Shell's plan to lay an 8″ lateral pipeline and corresponding marker across Churchill Farms's private property.  The Avondale Pump Station drains water into Marcello's Canal as a drainage canal and for flood protection in the area. The canal has no capacity for commercial vessels due to its shallow water[3] and the presence of rocks and debris.  Indeed, Marcello's

---

[2] Shell submitted evidence that that the canal was a "borrow canal" dug on undeveloped farmland to construct the levee in 1968; that, until the levee was created, there was no waterway (or even water); that, presently, the canal is a drainage canal serving a pump station.  (The pump station was built nearly 20 years later in 1985).

The plaintiff submits the NOAA charts in support of his argument that the canal is a navigable waterway.  But the charts do not list Marcello's Canal on the surveys for the region.  The plaintiff fails to suggest how the absence of Marcello's Canal on these charts could create a genuine dispute as to the material fact of navigability.  Furthermore, the plaintiff offers no case literature in support of his reliance on federal regulations to suggest that Marcello's Canal is influenced by tidal movement and, therefore, is navigable.  There is no evidence in the record creating a factual controversy concerning whether or not Marcello's Canal is a highway for commerce.  Rather, the only evidence in the record indicates that the canal is not susceptible of commercial commerce due to its shallow waters and presence of debris.

[3] The record shows that the depth of Marcello's Canal is often determined by rainfall and the amount of water pumped into the

Canal has never been determined, listed, or established by the U.S. Army Corps of Engineers or the U.S. Coast Guard as a "navigable" waterway. There is no evidence in the record that Marcello's Canal is a highway for commerce. Because the uncontroverted evidence shows that Marcello's Canal is a drainage canal not susceptible of sustaining commerce, just like the Seventeenth Street Canal, the London Avenue Canal, and the Orleans Avenue Canal, the Court finds as matter of law that Marcello's Canal is not a navigable waterway. Because the allision did not occur on a navigable waterway, admiralty jurisdiction is therefore lacking.

C.

In exercising its diversity jurisdiction,[4] the Court applies the state statutes of limitations and related state law governing tolling of the limitations period. See Hensgens v. Deere & Co., 869 F.2d 879, 880 (5th Cir. 1989).

---

canal by the pump station. Frickey's own testimony confirms just how shallow the canal is: he testified that the canal was so shallow in certain areas that his boat would "kick up mud."

[4] It is undisputed that the plaintiff is a Louisiana citizen, Shell is a citizen of Delaware with its principal place of business in Texas, and that the amount in controversy exceeds $75,000. (Frickey claims that, as a result of the allision, he has lost income in the amount of $90,000).

"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. The allision giving rise to Frickey's injuries occurred on March 21, 2014, making March 21, 2015 the last day to file a timely claim. Frickey sued Shell on September 30, 2015. His claims are also prescribed as a matter of state law.

Accordingly, the defendant's motion for summary judgment is GRANTED. The plaintiff's case is hereby dismissed.

New Orleans, Louisiana, November 14, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE